# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Viktors Ginters,

         Petitioner,

       v.

Mark Cangemi, District Director, U.S.
Immigration and Customs Enforcement
(ICE); Michael Chertoff, Secretary,
Department of Homeland Security;
Alberto Gonzalez, United States Attorney
General,

         Respondents;

and

Viktors Ginters and Rochelle Ginters,

         Plaintiffs,

       v.

Denise Frazier, District Director,
Citizenship and Immigration Services;
Eduardo Aguirre, Director, Citizenship
& Immigration Services; Michael
Chertoff, Secretary, Department of
Homeland Security; Alberto Gonzales,
United States Attorney General,

         Defendants.

**MEMORANDUM OPINION
AND ORDER**

Civil No. 06-638 ADM/AJB

Civil No. 06-956 ADM/AJB

---

Herbert Igbanugo, Esq., Blackwell Igbanugo, P.A., Minneapolis, MN, argued on behalf of
Petitioner/Plaintiffs.

Gregory G. Brooker, Esq., Assistant United States Attorney, Minneapolis, MN, argued on behalf
of Respondents/Defendants.

---

# I. INTRODUCTION

On February 24, 2006, oral argument before the undersigned United States District Judge was heard on Petitioner Viktors Ginters' ("Ginters" or "Petitioner") Petition for a Writ of Habeas Corpus ("habeas petition") [Civ. No. 06-638, Docket No. 1] and Motion for a Temporary Restraining Order ("TRO") [Civ. No. 06-638, Docket No. 2]. On March 2, 2006, Ginters and his wife, Rochelle Ginters ("Rochelle")[1], filed a Complaint for Declaratory Review of Visa Petition Denial by CIS District Director [Civ. No. 06-956, Docket No. 1] and Emergency Motion for a TRO [Civ No. 06-956, Docket No. 2]. For the reasons set forth herein, the Court lacks jurisdiction to hear Petitioner's habeas petition and accordingly transfers Petitioner's habeas petition to the Eighth Circuit. The Court dismisses Petitioner's Complaint for Declaratory Review, and both of Petitioner's TRO Motions are denied.

## II. BACKGROUND

**A.    Ginters' Marriage to Denise Harris and First I-130 Petition**

Petitioner Ginters is a thirty-two year old citizen of Latvia. Admin. Rec. [Civ. No. 06-638, Docket No. 20] at 2, 4. Ginters came to the United States on a B-2 nonimmigrant visitor's visa on October 28, 1995, and had permission to remain in the United States until October 26, 1996. Id. at 2, 40-41. On September 21, 1996, shortly before his visa was to expire, Ginters married Denise Harris ("Harris").[2] Id. at 17. Harris then filed a Petition for Alien Relative ("I-130 petition") on Ginters' behalf on March 11, 1997. Id. at 21, 30.

---

[1] Rochelle's maiden name is not revealed in the record. She will be referred to in the remainder of the Order as "Rochelle."

[2] Before marrying Ginters, Harris was known as Denise Bailey. After marrying Ginters, Harris became Denise Ginters. After her divorce from Ginters, she later remarried and became Denise Harris. For purposes of convenience, she will be referred to in this Order as "Harris."

According to Ginters, he met Harris at a bar in May of 1996. Ginters Aff. [Civ. No. 06-638, Docket No. 4] at 1; Admin. Rec. at 34. After dating for a few months, Harris asked Ginters to marry her. Ginters Aff. at 2-3; Admin. Rec. at 35. Ginters states that they had become best friends; Harris was in love with him, and he hoped that he would fall in love with her over time. Ginters Aff. at 2-3; Admin. Rec. at 35. However, Ginters' relationship with Harris deteriorated rapidly after they were married. Ginters Aff. at 4-5; Admin. Rec. at 36. Ginters allegedly changed his lifestyle after joining a church and becoming a Christian, but Harris was unwilling to conform to Ginters' new lifestyle or to give up smoking and drinking. Ginters Aff. at 4-5; Admin. Rec. at 36. Ginters moved out of the apartment he shared with Harris in January of 1997, after just four months of marriage, and ultimately divorced Harris on March 16, 1998. Ginters Aff. at 5.

On October 20, 1997, Harris wrote a letter to the Immigration and Naturalization Service ("INS"),[3] informing INS that the only reason Ginters married her was to stay in the United States and to stay out of the Latvian military. Admin. Rec. at 23. Harris alleged that Ginters never loved her and that their marriage was never consummated. Id. On December 1, 1997, Harris withdrew the I-130 petition filed on Ginters' behalf, leading the INS to deny Ginters' application for adjustment to permanent resident status on the same day. Id. at 21, 26, 30. Then, on February 9, 1998, the INS issued a Notice to Appear ("NOA") to Ginters, charging him as

---

[3] The INS ceased to exist on March 1, 2003, and its functions were transferred to the U.S. Citizenship and Immigration Services ("USCIS") and the U.S. Immigration and Customs Enforcement ("ICE"), divisions of the Department of Homeland Security ("DHS"). See Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002). For clarity, the Court will refer here to the INS, as it was the name of the entity at the time of most of the events in this case.

3

subject to removal for overstaying his visa.  Id. at 2.  At a hearing on July 7, 1998, Ginters

admitted the factual allegations in the NOA and conceded removability.  Id. at 50.

**B.     Ginters' Marriage to Rochelle Ginters and Second I-130 Petition**

Ginters first met Rochelle through their shared church on December 31, 1997.  Rochelle

Aff. [Civ. No. 06-638, Docket No. 3] at 1.  Ginters married Rochelle on May 9, 1998, two

months after divorcing Harris.  Id. at 2.  Ginters and Rochelle have now been married for almost

eight years, and have three daughters together, as well as two sons from Rochelle's previous

relationships.  Id. at 3.  Rochelle's two sons have legally changed their last names to Ginters.  Id.

Ginters and Rochelle jointly operate a residential cleaning business called Whiter Than Snow:

Ginters cleans homes while Rochelle schedules appointments and manages paperwork associated

with the business.  Id.  Rochelle is disabled by pars planitis, a chronic ocular inflammation that

causes major vision loss, and has been hospitalized in the past for depression, which has resulted

in her increased dependence on Ginters.  Id.

On June 10, 1998, Rochelle filed her first I-130 petition on Ginters' behalf.  Admin. Rec.

at 17.  On April 27, 1999, the INS sent Rochelle a Notice of Intent to Deny ("NOID") her I-130

petition on the ground that Ginters' first marriage to Harris had been a sham marriage entered

into for the purpose of circumventing the immigration laws, thereby precluding approval of the

petition filed by Rochelle under section 204(c) of the Immigration and Nationality Act ("INA").

Id.  On May 27, 1999, Ginters and Rochelle sought to attack the INS's determination by filing

both a motion to reopen the I-130 petition with the INS and an appeal of the INS's denial of the

I-130 petition to the Board of Immigration Appeals ("BIA").  In support of the motion to reopen,

Ginters and Rochelle filed affidavits and statements from friends attesting to the bona fide nature

of Ginters' marriage to Harris.  The INS declined the motion to reopen on the same day it was

filed, and on March 24, 2000, the BIA dismissed Ginters and Rochelle's appeal.  Id. at 44.

Ginters and Rochelle did not appeal the adverse decision to any court and the denial of the I-130

petition has stood unchallenged for the past six years.

## C.      Asylum Application and Removal Order

On September 22, 1998, a few months after Rochelle filed her first I-130 petition, Ginters

filed an application for asylum, withholding of removal, and relief under the Convention Against

Torture ("CAT") alleging a "justified fear of a clear probability of persecution" if he was

deported to Latvia based on his "membership in the Russian speaking minority."  Id. at 4-15.  He

also alleged a fear of being subject to military service where he would be exposed "to a far

greater risk of violence."  Id. at 6.  On May 20, 2002, an Immigration Judge ("IJ") denied

Ginters' asylum application, withholding of removal, and relief under the CAT, noting that

Ginters had not "demonstrated a well-founded fear of future persecution, or a clear probability of

such persecution . . . . it is well-recognized that it is not persecution for a country to require

military service."[4]  Id. at 58.  The IJ did grant Ginters the privilege of voluntarily departing the

United States on or before July 20, 2002.  Id. at 59.

Ginters appealed the IJ's decision, and on December 8, 2003, the BIA affirmed the IJ

without opinion.  Id. at 61.  The BIA granted Ginters voluntary departure within thirty days from

the date of the order.  Id.  Ginters appealed to the Eighth Circuit, and on November 3, 2005, the

---

[4] The IJ noted that Ginters' asylum application was not timely filed, and Ginters had not
established either changed circumstances or exceptional circumstances that would explain his
late filing, making him ineligible to apply for asylum.  Id. at 57.  Nonetheless, the IJ considered
the merits of the application.  Id.

Eighth Circuit denied Ginters' petition for review of the BIA and the IJ's denial of his asylum application, withholding of removal, and relief under the CAT, holding that "a reasonable fact-finder could conclude that Ginters . . . failed to establish it is more likely than not he would be persecuted if he returned to Latvia."[5]  Id. at 65.  On December 27, 2005, the Eighth Circuit issued its mandate.  Id. at 67.

On January 17, 2006, a warrant of removal/deportation was issued for Ginters, and on January 23, 2006, the INS issued a "surrender notice" to Ginters, directing him to report to an immigration officer on February 6, 2006 for deportation.  Id. at 70, 72.  On February 6, 2006, Ginters reported to the INS and was taken into custody.  Id. at 75.  On the same day, he filed an application for a stay of deportation or removal with the INS, which was denied.  Id. at 69, 75.

**D.     Harris' Recantation and the Instant Litigation**

On February 16, 2006, Ginters filed his habeas petition and Motion for a TRO with this Court.  The next day, Harris filed an affidavit, recanting her former statements regarding her sham marriage to Ginters.  Harris Aff. [Civ. No. 06-638, Docket No. 15].  Harris stated that her previous letters about Ginters marrying her for the sole purpose of remaining in the United States were written out of "anger, confusion, broken heart and a determination to hurt [Ginters] as much as I felt he had hurt me, by walking away from our marriage."  Id. at 2.  She also stated "categorically that [Ginters] cared about me and did not marry me simply to obtain a green card."  Id. at 13.  On February 20, 2006, Rochelle filed a second I-130 petition on Ginters'

_____

[5] The Eighth Circuit also noted: "Ginters does not appear to challenge the IJ's conclusion that his asylum application was untimely and that he did not demonstrate extraordinary circumstances relating to his delay in seeking asylum, but in any event, we would lack jurisdiction to consider such a challenge."  Id. at 64-65.

behalf, premised on Harris' affidavit evincing her change of heart.  Ginters Supp. Mem. of Law [Civ. No. 06-638, Docket No. 24] at 1.

The Court heard oral argument on this matter on February 24, 2006.  At oral argument, the government asserted that it has obtained travel documents for Ginters and is prepared to deport him.  See also Admin. Rec. at 78.  The Court took the matter under advisement after the government agreed not to deport Ginters while the instant litigation is pending.  The parties requested supplemental briefing on jurisdiction.  Ginters filed a lengthy supplemental brief on February 27, and the government responded on March 1.  On March 1, Ginters filed a letter with this Court [Civ. No. 06-638, Docket No. 26], informing the Court that based on the government's response, Ginters would be filing a complaint based on the Declaratory Judgment Act ("DJA"), and imploring the Court to consider the new filing in making a decision on the TRO.  On March 2, 2006, Ginters filed a Complaint for Declaratory Review of Visa Petition Denial by CIS District Director and a Emergency Motion for a TRO.

### III. DISCUSSION

As a threshold matter, the Court must determine whether it has jurisdiction over Ginters' habeas petition.  In his habeas petition, Ginters recites a laundry list of bases for jurisdiction: 1) 28 U.S.C. § 1331; 2) Section 106(a)(10) of the INA, 8 U.S.C. § 1101 et seq.; 3) the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 and 1001 et seq.; 4) habeas jurisdiction pursuant to 28 U.S.C. § 2241 et seq.; Art. I, § 9, Cl.2 of the United States Constitution; and the common law; 5) DJA, 28 U.S.C. § 2201 et seq.; 6) All Writs Act, 28 U.S.C. § 1651; and 7) mandamus jurisdiction pursuant to 28 U.S.C. § 1361.  In response, the government alleges that the Court does not have jurisdiction to review the INS/BIA's denial of Ginters' second I-130

petition (the first one filed by Rochelle) or the INS's denial of his stay of departure because both are discretionary determinations of an agency under 8 U.S.C. § 1252(a)(2)(B) and unreviewable in a habeas petition.  The government also alleges that section 106(a) of the REAL ID Act of 2005, Pub. L. No. 109-13, Div. B., 1129 Stat. 231, codified in 8 U.S.C. § 1252, amending section 242(a) of the INA, precludes this Court from exercising jurisdiction, habeas or otherwise, over any claims related to Ginters' order of removal.

The parties have submitted supplemental briefing on the question of jurisdiction.  Ginters alleges that the REAL ID Act does not apply here because he is not challenging his removal order *per se*, but rather the denial of his I-130 petition, the Court has habeas jurisdiction to review the INS/BIA's denial of his I-130 petition because it is a non-discretionary decision, and because the removal order arose from an asylum claim, it is specifically exempted from the limitations on judicial review in the REAL ID Act.  The government responds that the DJA and the APA do not provide Ginters with independent bases for jurisdiction, Ginters can not achieve direct review of an agency decision through habeas proceedings, the judgment of the agency regarding whether one qualifies for an I-130 petition after an investigation of the facts and application of the law is a discretionary agency determination, and this Court has no jurisdiction to review any of Ginters' asylum claims.

> 8 U.S.C. § 1252(a)(2)(B), as amended by the REAL ID Act of 2005, states Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review--
>
> (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of

relief under section 1158(a) of this title.

This statute clearly states that courts do not have jurisdiction to review agency decisions that are specified to be discretionary, regardless of whether the decision is made in the context of a removal proceeding, unless the discretionary decision relates to the granting of asylum.

8 U.S.C. § 1151(b)(2)(A)(i) defines "immediate relatives" as "the children, spouses, and parents of a citizen of the United States."  8 U.S.C. § 1154(a)(1)(A)(i) specifies that "[a]ny citizen of the United States claiming that an alien is entitled to classification by reason of . . . 1151(b)(2)(A)(i) of this title may file a petition with the Attorney General for such classification."  8 U.S.C. § 1154(b) states that:

> After an investigation of the facts in each case . . . the Attorney General shall, if he determines that the facts stated in the petition are true and that the alien in behalf of whom the petition is made is an immediate relative specified in section 1151(b) of this title . . . approve the petition and forward one copy thereof to the Department of State. The Secretary of State shall then authorize the consular officer concerned to grant the preference status."

Regarding the denial of I-130 petitions on the basis of sham marriage, 8 U.S.C. § 1154(c) states:

> Notwithstanding the provisions of subsection (b) of this section no petition shall be approved if (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or (2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.

The language of the preceding statutes suggests that the granting of an I-130 petition on the basis of "immediate relative" status, as long as the facts alleged in the petition are true, is not

a discretionary act.  The statutes also suggest that the denial of an I-130 petition on the basis of a

previous marriage entered into for the purpose of evading the immigration laws is not a

discretionary act.  While a director may have no choice but to deny an immigrant's I-130 petition

once it has been determined that the immigrant previously entered into a sham marriage, the

director does have discretion to decide in the first instance whether or not a sham marriage has

occurred.  Cf. Asare v. Ferro, 999 F. Supp. 657, 659-60 (D. Md. 1998) (stating that decision

whether immigrant qualifies as immediate relative of petitioner "would necessarily involve an

investigation into the validity of the [immigrant's] marriage under state and immigration law");

Horta-Ruiz v. United States Dep't of Justice INS, 635 F. Supp. 1039, 1040 (S.D.N.Y. 1986)

("Granting preferential status to visa petitions is within the broad discretion of the INS . . . .").

        8 C.F.R. § 204.2(a)(2) requires evidence to support a petition for a spouse, including

evidence of United States citizenship and evidence of the marital relationship, such as a

certificate of marriage issued by civil authorities and proof of the legal termination of all

previous marriages.  8 C.F.R. § 204.2(a)(1)(ii) states that there must be "substantial and

probative evidence" of an immigrant's attempt or conspiracy to enter into a marriage for the

purpose of evading immigration laws for the director to deny an I-130 petition.  While it appears

that no other statutes or regulations explicate how the INS is to determine "substantial and

probative evidence," it is clear that a determination of "sham marriage" can not be made without

some subjective weighing of the evidence.  In this case, the INS gathered evidence and, rightly

or wrongly, made a "sham marriage" determination based on the evidence presented.  See

Admin. Rec. at 17-20.  Because the determination of whether Ginters had entered into a previous

sham marriage for purposes of deciding whether to grant or deny Ginters' I-130 petition was a

discretionary decision, this Court does not have jurisdiction to review it pursuant to 8 U.S.C.
§ 1252(a)(2)(B)(ii).

8 C.F.R § 241.6(a), governing requests for a stay of removal, states: "The . . . district
director, in his or her discretion and in consideration of factors listed in 8 CFR 212.5 and section
241(c) of the Act, may grant a stay of removal . . . for such time and under such conditions as he
or she may deem appropriate." 8 C.F.R. § 212.5 lists factors such as serious medical condition,
pregnant women, juveniles, aliens who will be witnesses, and aliens whose continued detention
is not in the public interest. 8 U.S.C. § 1231(c)(2)(A)(i) states that the Attorney General may
stay removal of an alien if immediate removal is not practicable or proper. The discretionary
language in the regulation and lack of specific criteria guiding the decision support that the
determination of an application for a stay of removal is a discretionary determination, and
therefore falls within the jurisdictional bar enunciated in 8 U.S.C. § 1252(a)(2)(B)(ii).

Ginters is not completely without review of his claims, however, as 8 U.S.C.
§ 1252(a)(2)(B) saves judicial review of some discretionary decisions "as provided in
subparagraph (D)." Subparagraph (D) states:

> Nothing in subparagraph (B) or (C), or in any other provision of this chapter (other than
> this section) which limits or eliminates judicial review, shall be construed as precluding
> review of constitutional claims or questions of law raised upon a petition for review filed
> with an appropriate court of appeals in accordance with this section.

Therefore, any constitutional claims or issues of law Ginters may have with respect to the denial
of his I-130 petition or the denial of his application for stay of removal are preserved for review,
but must be reviewed by the Eighth Circuit Court of Appeals rather than the District Court.

Even if the determination that Ginters' previous marriage to Harris was a sham for

11

purposes of denying Rochelle's first I-130 petition is not a discretionary determination, the Court

still does not have jurisdiction over Ginters' case.  The REAL ID Act also added another

provision to the INA, codified at 8 U.S.C. § 1252(a)(5), as follows:

> Notwithstanding any other provision of law (statutory or nonstautory), including section
> 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of
> such title, a petition for review filed with an appropriate court of appeals in accordance
> with this section shall be the sole and exclusive means for judicial review of an order of
> removal entered or issued under any provision of this chapter . . . . For purposes of this
> chapter, in every provision that limits or eliminates judicial review or jurisdiction to
> review, the terms "judicial review" and "jurisdiction to review" include habeas corpus
> review pursuant to section 2241 of Title 28, or any other habeas corpus provision,
> sections 1361 and 1651 of such title, and review pursuant to any other provision of law
> (statutory or nonstatutory).

This new section strips the district courts of habeas jurisdiction with respect to removal orders,

and grants to the courts of appeals the sole and exclusive means for reviewing an order of

removal.

In this case, a valid order of removal has been issued, and affirmed by the Eighth Circuit.

The judgment matured into a mandate when no action was taken by Petitioner after the decision

issued.  Ginters asks the Court, through this action, to do indirectly what it can not do directly.

While Ginters' action does not challenge his removal order *per se*, in the sense that Ginters does

not ask the Court to specifically review the denial of his asylum application and withholding of

removal, a review of Rochelle's first I-130 petition by this Court resulting in a favorable

determination for Ginters would indirectly challenge the validity of the removal order.  See

Haider v. Gonzales, Nos. 04-3585/06-1014, slip op. at 12-13 (8th Cir. Feb. 27, 2006) (holding

district court properly transferred habeas petition to Eighth Circuit because Petitioner's challenge

to the constitutionality of the notice provided to him was, in effect, a challenge to the ultimate

order of removal); <u>see also</u> <u>Sabhari v. Reno</u>, 197 F.3d 938, 942 (8th Cir. 1999) (holding that the

Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), which amended the

INA prior to the enactment of the REAL ID Act, did "not foreclose all possible review of INS

administrative actions in the district court—at least when those actions do not implicate the

deportation process . . . .").

  The Court lacks jurisdiction over Ginters' request that the Court review the INS's denial

of his application for a stay of deportation or removal for the same reasons.  In addition, Ginters'

other claims regarding whether any court has adjudicated the timeliness of his asylum

application and whether Harris' recantation affidavit changes the analysis with respect to

Ginters' asylum and withholding of removal application implicates the validity of Ginters'

removal order.  Accordingly, this Court does not have jurisdiction to adjudicate Ginters' habeas

petition.  Ginters' review lies with the Eighth Circuit and not with this Court.

  Additionally, this Court is loath to exercise jurisdiction here, where the Eighth Circuit

has issued a mandate with respect to its order denying Ginters' petition for review of the BIA's

affirmance of the IJ's denial of his application for asylum, withholding of removal, and relief

under the CAT.  Finding jurisdiction here and granting a TRO would render nugatory the

mandate.  While the Eighth Circuit may have the inherent power to revisit and recall its mandate,

the district court should refrain from exercising jurisdiction over cases in which the relief

requested, if granted, would interfere with the Eighth Circuit's previously issued mandate.  <u>Cf.</u>

<u>Lamb Eng'g & Constr. Co. v. Neb. Pub. Power Dist.</u>, 145 F.3d 996, 998 (8th Cir. 1998) ("Under

the law of the case doctrine, the district court was bound on remand to obey the Eighth Circuit's

mandate and not to re-examine issues already settled by our prior panel opinion."); <u>Riha v. Int'l</u>

Tel. and Tel. Corp., 533 F.2d 1053, 1055 (8th Cir. 1976) ("We have held that once the period for requesting rehearing has expired, our power to recall mandates should be exercised sparingly.").

The Court sympathizes with Ginters' plight and has serious concerns about the sham marriage determination that relied on the since-recanted words of a woman scorned. However, this concern does not vest the Court with jurisdiction over Petitioner's claims, and the Court can not exercise jurisdiction where it does not exist. Section 106(c) of the REAL ID Act directs that cases brought in the district courts under 28 U.S.C. § 2241 and challenging a final administrative order of removal shall be transferred to "the court of appeals for the circuit in which a petition for review could have been properly filed under . . . 8 U.S.C. § 1252." See also Tostado v. Carlson, No. 05-1053, slip op. at 3 (8th Cir. Feb. 3, 2006) ("[A]ny habeas corpus petition pending in the district court in which an alien challenges a final administrative order of removal, deportation, or exclusion must be transferred by the district court to the appropriate court of appeals."). Accordingly, the Court transfers Ginters' habeas petition to the Eighth Circuit, and denies his Motion for a TRO.

As a final matter, the Court addresses Ginters' eleventh-hour filing of a DJA Complaint on March 2, 2006—less than one week after the Court took this habeas action under advisement—asserting essentially the same facts and legal theories. The Court does not have jurisdiction over Ginters' DJA action for many of the same reasons listed above, including the inability to review: 1) discretionary agency determinations even outside the context of removal proceedings under any provision of law (statutory or nonstatutory) pursuant to 8 U.S.C. § 1252(a)(2)(B)(ii), and 2) an order of removal, either directly or indirectly, under any provision

14

of law (statutory or nonstatutory) pursuant to 8 U.S.C. 1252(a)(5).  Additionally, "[i]t has long

been understood that the federal [DJA] . . . is a procedural statute not a jurisdictional statute.

Accordingly, federal jurisdiction is proper only if this case comes within an express

congressional grant of jurisdiction."  State of Mo. ex rel. Mo. Highway and Transp. Comm'n v.

Cuffley, 112 F.3d 1332, 1334 (8th Cir. 1997).  Finally, to the extent Ginters asserts jurisdiction

under the APA, the APA "is not to be interpreted as an implied grant of subject matter

jurisdiction to review agency actions."  Califano v. Sanders, 430 U.S. 99, 104 (1977).  Also,

jurisdiction is not available under the APA where alternate adequate review procedures are

available and mandated by law.  Bowen v. Mass., 487 U.S. 879, 903 (1988).  Accordingly,

Ginters' DJA Complaint is dismissed for lack of jurisdiction and the accompanying TRO motion

is denied.

## IV. CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1. Petitioner's Petition for a Writ of Habeas Corpus [Civ. No. 06-638, Docket No. 1] is

**TRANSFERRED** to the Eighth Circuit Court of Appeals;

2. Petitioner's Motion for a Temporary Restraining Order [Civ. No 06-638, Docket No.

2] is **DENIED**;

3. Plaintiffs' Complaint for Declaratory Review of Visa Petition Denial by CIS District

Director [Civ. No. 06-956, Docket No. 1] is **DISMISSED**; and

4. Plaintiffs' Emergency Motion for a TRO [Civ No. 06-956, Docket No. 2] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  March 7, 2006.

16